**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| W&T OFFSHORE, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Case No. __________ |
| UNITED STATES DEPARTMENT OF THE INTERIOR, | § | |
| | § | |
| | § | |
| *Defendant.* | § | |

## COMPLAINT

Plaintiff W&T Offshore, Inc. ("W&T") files this Original Complaint against Defendant United States Department of the Interior ("DOI" or the "Department"). W&T would respectfully show the following and seek the relief set forth below:

1. W&T seeks judicial review of a final decision (the "Decision") by the Department, a letter order regarding decommissioning of Lease OCS 00385, West Delta Block 29 ("WD 29" or the "Lease") issued to W&T by the Department's Bureau of Safety and Environmental Enforcement ("BSEE"). Letter Order (April 6, 2026), attached hereto as Exhibit 1.

## JURISDICTION AND VENUE

2. This action arises under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §§ 1331, *et seq.*; and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, *et seq.*

3. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question); 43 U.S.C. § 1349(b)(1) (OCSLA); and 5 U.S.C. § 704 (judicial review of final agency action).

4. The Decision constitutes a final agency action appropriate for judicial review under 5 U.S.C. § 704. *See* 43 C.F.R. § 4.21(b)(2) ("A decision that is in effect, or goes into effect, pending completion of an appeal is final agency action for the Department, subject to being superseded by a final decision of the Director or an Appeals Board.").

5. The United States has waived sovereign immunity for W&T's claims seeking non-monetary relief under the APA. 5 U.S.C. § 702; *see Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 488 (5th Cir. 2014).

6. Venue is proper as the Department may be found in this district. 43 U.S.C. § 1349(b)(1); 28 U.S.C. § 1391(e).

## PARTIES

7. W&T is a corporation organized under the laws of the State of Texas and has its principal office located in Houston, Texas.

8. The Department is a federal executive department and agency of the United States government.

## FACTUAL ALLEGATIONS

### A. Regulatory Framework

9. Relevant to this case, there are two types of interest in offshore oil and gas. Record title interest represents ownership of the federal lease itself—the right to transfer

or relinquish, and the obligation to pay rent/royalties. *See* 43 C.F.R. § 3100.5. Record title interest holders are referred to as lessees or title owners.

10. Operating rights interest, or working interest, allows the holder to explore, drill, and produce. *Id.* Operating rights interest holders are referred to as operating rights owners.

11. Record title and operating rights interests are severable interests. Lessees may sublease operating rights, severing the operating rights from the record title interest. Lessees remain liable for regulatory compliance, even if they sublease operating rights.

12. Two Department bureaus operate in the offshore energy space: the Bureau of Ocean Energy Management ("BOEM") and BSEE.[1]

13. BOEM manages offshore resource leasing, planning, and environmental studies. BOEM is the agency responsible for issuing oil and gas leases, approving rights assignments, and approving exploration and development plans, such as plans for new pipelines, wells, and platforms. BOEM is additionally responsible for maintaining the serial register page for offshore leases, which documents a lease's status, records assignments, and identifies title owners and operating rights owners.

14. BSEE, as the name implies, is primarily responsible for enforcing safety and environmental regulations pertaining to offshore field operations. BSEE's responsibilities include overseeing decommissioning of offshore infrastructure and enforcing 30 C.F.R.

[1] On October 1, 2011, the Minerals Management Service ("MMS") was officially split into BOEM and BSEE.

Part 250, Subpart Q, the federal regulations issued under OCSLA that govern offshore decommissioning activities.

15. Under the regulations, lessees and operating rights owners, as well as their predecessors, are jointly and severally liable for their *accrued* decommissioning obligations. 30 C.F.R. § 250.1701(a); *see also id.* § 250.1700(d) (defining "predecessor" to mean "a prior lessee or owner of operating rights, or a prior holder of a right-of-use and easement grant or a pipeline right-of-way grant, that is liable for accrued obligations on that lease or grant").

16. Per section 250.1702 of the regulations, decommissioning obligations are accrued in a finite number of ways.

> *You accrue decommissioning obligations when you do any of the following:*
>
> *(a) Drill a well;*
>
> *(b) Install a platform, pipeline, or other facility;*
>
> *(c) Create an obstruction to other users of the OCS;*
>
> *(d) Are or become a lessee or the owner of operating rights of a lease on which there is a well that has not been permanently plugged according to this subpart, a platform, a lease term pipeline, or other facility, or an obstruction;*
>
> *(e) Are or become a holder of a pipeline right-of-way grant on which there is a pipeline, platform, other facility, or an obstruction;*
>
> *(f) Are or become the holder of a right-of-use and easement grant on which there is a well, pipeline, platform, other facility, or an obstruction; or*
>
> *(g) Re-enter a well that was previously plugged according to this subpart.*

17. "You" means "a lessee, the owner or holder of operating rights, a designated operator or agent of the lessee(s), a pipeline right-of-way holder, or a State lessee granted a right-of-use and easement." *Id.* § 250.105.

18. A predecessor lessee or predecessor operating rights owner does not accrue decommissioning obligations for infrastructure installed after it has divested its interest in that lease. While predecessors hold joint and several liability for decommissioning obligations, this liability is limited to obligations that accrued *during* their period of ownership.

19. Offshore infrastructure with no solvent responsible party remaining is considered "orphaned" infrastructure. BSEE manages orphaned infrastructure and the federal government allocates funds to help BSEE decommission orphaned infrastructure.

20. As part of its responsibility to oversee decommissioning, BSEE is empowered to issue decommissioning orders when leases, ROWs or RUEs expire. BSEE is authorized to issue decommissioning orders requiring recipients to comply within specified timeframes and to perform required decommissioning in the time and manner specified. 30 C.F.R. § 250.1708. Failure to maintain and monitor facilities or to submit a decommissioning plan as required under § 250.1708(a) may result in an Incident of Noncompliance and potentially other enforcement actions, including civil penalties (fines). "The maximum civil penalty is $55,764 per day per violation." *Id.* § 250.1403. BSEE also has discretion to review violations (failures to comply with regulations issued under OCSLA) for potential civil penalties. *See id.* § 250.1404.

21. Any party adversely affected by a BSEE official's final decision or order may appeal to the Department's Interior Board of Land Appeals ("IBLA"). *See id.* § 290.2; 43 C.F.R. Part 4, Subpart E. Governing federal regulations grant IBLA broad authority to review decisions on appeal "as fully and finally as might the Secretary," with authority to affirm, modify, vacate, set aside, or reverse any decision. 43 C.F.R. § 4.413. Additionally, an appealing party may petition IBLA to stay the effect of BSEE's decision or order during an appeal. 43 C.F.R. § 4.405(b)(1). If IBLA denies a petition to stay, the decision or order on appeal "will become effective immediately," *id.* § 4.405(a)(3), at which point the decision or order is considered final agency action. *Id.* § 4.21(b)(2); *see also Farrell-Cooper Mining Co. v. United States Dep't of Interior*, 864 F.3d 1105, 1113 (10th Cir. 2017) (citing *Darby v. Cisneros*, 509 U.S. 137, 152 (1993)).

**B. <u>BOEM Error Creates Cloud in WD 29 Title</u>**

22. At issue in this case is West Delta Block 29, OCS 00385 ("WD 29"), located in the Gulf of America.

23. W&T has never held record title interest in WD 29. W&T did hold operating rights interest in WD 29 from 1997 until January 1, 2013, when W&T divested its last interest in the lease to EPL Oil & Gas, LLC ("EPL").[2]

24. From January 1, 2011, until the lease was relinquished on March 15, 2024, EPL held 100% record title interest in WD 29.

[2] Energy Partners, Ltd. changed its name to EPL Oil & Gas, Inc. effective on September 1, 2012. EPL Oil & Gas, Inc. changed its name (by conversion) to EPL Oil & Gas, LLC effective on December 31, 2018.

25. In December 2011, Susan Hooper, of BOEM's Adjudication Section, emailed EPL's Becky Brennan in response to a question about designating an operator on various WD 29 tracts.[3] In her email, Ms. Hooper acknowledged that another BOEM employee—Debbie Armond—had recently "made three (3) tracts 'current' that were 'historical' before" and consequently BOEM's "records are messed up on this block." The December 2011 email is attached hereto as Exhibit 2.

26. The three tracts affected by BOEM's error were SE1/4SW1/4SW1/4, SE1/4NE1/4SW1/4, and SW1/4NW1/4SE1/4 (the "Clouded Tracts").

27. In her December 2011 email, Ms. Hooper went on to ask Ms. Brennan to "hold off a couple of days" before submitting a designation of operator form "to see if Debbie can straighten out the records." However, nearly *two years* later, BOEM had still not resolved the issue BOEM's own error and delay created.

28. On May 2, 2013, W&T reached out to BOEM's Susan Hooper via email regarding the WD 29 lease records. Over a month later, Ms. Hooper finally responded, again acknowledging the lease errors created by BOEM and explaining BOEM had not yet fixed the errors: "There is a problem on this lease. A review of the assignments caused some historical tracts to be made active. We don't have access to the original file, it was lost. I don't think the records are correct; however, I haven't had time to get back to it."

---

[3] Lease areas are often subdivided into sections, known as tracts or aliquots, which typically use cardinal directions to specifically describe the subdivision's location. *See* 30 C.F.R. § 556.105 ("Aliquot or Aliquot part means an officially designated subdivision of a lease's area, which can be a half of a lease (1/2), a quarter of a lease (1/4), a quarter of a quarter of a lease (1/4 1/4), or a quarter of a quarter of a quarter of a lease (1/4 1/4 1/4).").

29. Ms. Hooper's email to W&T never suggested that BOEM's correction of its own errors regarding the WD 29 lease was in any way time sensitive. Ms. Hooper's communications also indicated that BOEM would handle the corrections and that no action was needed from W&T or EPL.

**C. <u>W&T Assigns All of its Operating Rights in WD 29 to EPL</u>**

30. On October 29, 2013, EPL filed with BOEM eleven assignments of operating rights (the "Assignments") and all necessary paperwork—including all required filing fees, which BOEM promptly processed as reflected in the Pay.gov receipts—as required by 30 C.F.R. § 556.701. The Assignments covered eleven WD 29 tracts and conveyed all of W&T's operating rights interests in WD 29 to EPL. All eleven Assignments had effective dates of January 1, 2013.

31. Only three of the eleven Assignments involved the three Clouded Tracts. The remaining eight Assignments covered unencumbered tracts.

**D. <u>EPL Installs New Infrastructure on WD 29 with BOEM Approval</u>**

32. With the Assignments submitted to BOEM, as sole lease interest holder, EPL submitted plans to BOEM to install on WD 29 a new platform (Platform J), four new wells (Wells J001, J002, J003, and J004), and three new pipeline segments (19038, 19039, and 19040) (all together, the "EPL Infrastructure"). EPL's plans listed WD 29's NW1/4NW1/4SW1/4 tract as the proposed location for Platform J. On each of the plans submitted to BOEM, EPL listed itself as the operator, signed as "Lessee or Operator," and made no reference to W&T.

33. On December 26, 2013, BOEM approved EPL's plans for installation of Pipeline Segment Numbers ("PSN") 19038, 19039, and 19040 and on February 27, 2014, EPL completed installation of the three pipelines.

34. On January 27, 2014, BOEM approved EPL's plans for Platform J and Wells J002 and J003. On March 6, 2014, EPL completed installation of Platform J. EPL spudded Well J002 on April 13, 2014, and Well J003 on July 26, 2014. All of the EPL Infrastructure was approved by BOEM and installed by EPL long after the January 1, 2013, effective date of W&T's WD 29 operating rights assignments to EPL.

35. Platform J is located in the NW1/4NW1/4SW1/4 tract of WD 29. The record title interest and operating rights interest for the NW1/4NW1/4SW1/4 tract have never been severed. EPL has held 100% record title interest and operating rights interest in the NW1/4NW1/4SW1/4 tract since January 1, 2011, when EPL acquired 100% of the record title interest in WD 29. W&T has never held any interest in the NW1/4NW1/4SW1/4 tract and consequently none of the eleven Assignments cover this tract.

36. Wells J002 and J003 are located in the NE1/4NW1/4SW1/4 tract of WD 29. W&T assigned all its operating rights interest in the NE1/4NW1/4SW1/4 tract to EPL effective January 1, 2013. The NW1/4NW1/4SW1/4 tract is not one of the three Clouded Tracts.

37. The pipelines were installed to support production on Platform J in the NW1/4NW1/4SW1/4 tract. Additionally, no part of the pipelines EPL installed is located in any of the three Clouded Tracts. All three pipelines cover three tracts:

SE1/4SW1/4NW1/4, NW1/4NE1/4SW1/4, and NE1/4NW1/4SW1/4. Pipeline 19038 additionally covers the SW1/4SW1/4NW1/4 tract.

## E. <u>After BOEM Approved EPL's Installation of New WD 29 Infrastructure, BOEM Asks EPL and W&T to Execute Stipulations of Interest for the Clouded Tracts BOEM Created</u>

38. On September 11, 2014, Ms. Brennan at EPL again reached out to BOEM for an update on WD 29. BOEM Deputy Regional Supervisor Ann Glazner responded to Ms. Brennan's inquiry, assuring EPL that BOEM was handling the problem on its end:

> *I apologize that the problems with the operating rights for OCS 0385 are affecting your permit and production. Debbie Armond is working to correct the operating rights so the pending assignments and any related DOOs can be processed; hopefully leading to resolution for your permitting and production issues. I will ask Debbie for an update on the corrections and will provide same to you as soon as I receive the status.*

The email chain containing the September 11, 2014, email is attached hereto as Exhibit 3.

39. It was only after this prompting by EPL that BOEM personnel indicated that the parties to the Assignments would need to take action to correct BOEM's error from three years prior. In a September 22, 2014, email to an EPL colleague and a W&T employee, *see* Exhibit 3, Ms. Brennan explained:

> *The BOEM had lost some DOO'S relative to WD 29. They still had some aliquots in the name of Chevron Inc. Jim Laree with Chevron has provided copies of said DOO's to the BOEM. Debbie Armond with BOEM has said now that she has those DOO's we will need to prepare a Stipulation of Interest between W&T & EPL to put all of WD 29 into EPL. Debbie was to call Jamie Vasquez with W&T to have them prepare the Stipulation. I do not know the outcome of that. Let me know if you have any questions.*

40. On September 9, 2016, EPL filed three Stipulations of Interest with BOEM (the "Stipulations"). The Stipulations cover only the Clouded Tracts and correct BOEM's

error to clear title to the tracts. Each of the Stipulations has an effective date of January 1, 2013.

41. On March 21 and 24, 2017, *four years* after the transfer, BOEM approved the Assignments for the eight unencumbered tracts, which include all of the tracts where the EPL Infrastructure is located. No stipulations of interest were filed with respect to these eight tracts as it was unnecessary. On the serial register page for WD 29, BOEM listed January 1, 2013, as the effective date for the eight Assignments.

42. On May 8, 2017—a month and a half later—BOEM approved the assignments for the three previously Clouded Tracts that were the subject of the Stipulations. On the serial register page for WD 29, BOEM again listed January 1, 2013, as the effective date for the three Assignments.

**F. <u>BSEE Orders WD 29 Decommissioning</u>**

43. For seven years, EPL worked the WD 29 lease as sole lessee and operating rights owner. On March 15, 2024, BOEM accepted EPL's relinquishment of the WD 29 lease, triggering the start of the decommissioning process. *See* 30 C.F.R. § 250.1710; *id.* § 250.1725(a). As of that date, EPL retained 100% record title interest and operating rights interest in the lease. In June 2024, EPL notified BSEE by letter that EPL would not be performing any of its required decommissioning work on WD 29.[4]

44. On July 8, 2024, BSEE sent EPL's WD 29 predecessors-in-interest—W&T, Chevron Inc., and Anglo-Suisse Offshore Partners, LLC—a Decommissioning Order for

[4] On May 14, 2023, EPL filed a voluntary petition for Chapter 11 bankruptcy. The case was subsequently converted to a Chapter 7 bankruptcy.

Lease OCS 00385 (the "Decommissioning Order") notifying them of EPL's default of its decommissioning obligations for WD 29 and ordering the recipients to complete their respective accrued decommissioning obligations. The Decommissioning Order is attached hereto as Exhibit 4.

45. The Decommissioning Order's enclosure identified the predecessors' accrued decommissioning obligations. The Decommissioning Order incorrectly included Platform J and PSNs 19038, 19039, and 19040 in W&T's accrued liabilities. The Decommissioning Order similarly included Platform J and PSNs 19038, 19039, and 19040 among Chevron's accrued liabilities.

46. On October 4, 2024, BSEE issued an amended decommissioning order (the "Amended Order"). The Amended Order purported to add Wells J002 and J003 to W&T's accrued liabilities. Under the Amended Order, BSEE incorrectly attributed accrued liability for all of the EPL Infrastructure to W&T. The Amended Order also removed Platform J and PSNs 19038, 19039, and 19040 from Chevron's accrued liabilities. The Amended Order incorrectly states that Platform J is located in the ***NE1***/4NW1/4SW1/4 tract of WD 29, one of the unencumbered tracts. Platform J is actually located in the ***NW1***/4NW1/4SW1/4 tract, a tract that is not covered by any of the Assignments and in which W&T has never held any interest. The Amended Order is attached hereto as Exhibit 5.

47. On June 25, 2025, BSEE issued to W&T an Incident of Noncompliance ("INC A805"). BSEE's issuance of INC A805 was premised on W&T's purported failure

to (1) perform monitoring and maintenance on Platform J and (2) comply with the Decommissioning Order and Amended Order. INC A805 is attached hereto as Exhibit 6.

48. On August 4, 2025, W&T timely filed a notice of appeal and petition to stay INC A805 to IBLA (the "INC Appeal").

49. On December 12, 2025, BSEE moved to dismiss the INC Appeal on the grounds that the orders underlying INC A805—the Decommissioning Order and the Amended Order—are administratively final. In support, BSEE attached as an exhibit to its motion a declaration of Bernadette Thomas, former Chief of Adjudication for BOEM, dated December 12, 2025.

50. On December 15, 2025, during the pendency of W&T's INC Appeal, BSEE issued a new order to W&T and EPL's other WD 29 predecessors regarding decommissioning of another pipeline on WD 29, PSN 11638. W&T timely appealed the PSN 11638 decommissioning order, docketed at IBLA 2026-0088. This appeal has been suspended at the joint request of BSEE and W&T as Chevron has committed to BSEE that it will be completing the decommissioning work for PSN 11638.

51. On January 16, 2026, W&T filed a response to BSEE's motion to dismiss the INC Appeal. But on January 29, 2026, IBLA dismissed the INC Appeal, agreeing with BSEE that the Decommissioning Order and Amended Order were administratively final and thus IBLA lacked jurisdiction to consider the INC Appeal.[5]

---

[5] On April 29, 2026, W&T filed a Complaint with this Court seeking judicial review of IBLA's order dismissing the INC Appeal. *See W&T Offshore, Inc. v. United States Department of the Interior*, 3:26-cv-00139.

52. On April 6, 2026, over two months after IBLA dismissed W&T's INC Appeal, BSEE issued yet another amendment to the Decommissioning Order with respect to WD 29 (the "Second Amended Order"). The Second Amended Order once again altered the allocation of accrued decommissioning obligations amongst EPL's predecessors-in-interest, though BSEE continued to misidentify Platform J as being located in the ***NE1***/4NW1/4SW1/4 tract of WD 29 (one of the unencumbered tracts), when Platform J is actually located in the ***NW1***/4NW1/4SW1/4 tract (a tract that is not covered by any of the Assignments and in which W&T has never held any interest). The Second Amended Order also incorrectly attributed accrued decommissioning liability to W&T for Wells J002 and J003, when EPL installed those wells after W&T assigned to EPL all its operating rights interest in WD 29 and no longer held any interest in the Lease. Consequently, the Second Amended Order continued to incorrectly list the EPL Infrastructure among W&T's accrued liabilities.

53. With the Second Amended Order, BSEE modified the Amended Order by assigning W&T new decommissioning obligations with respect to Well No. 031 and PSN 17346.[6] Once again, BSEE's pattern of misidentifying the correct aliquot continued. With respect to PSN 17346, the Second Amended Order correctly states the pipeline originates from Caisson No. 037. However, the Second Amended Order incorrectly states that Caisson No. 037 is located in the ***SW1***/4SW1/4NW1/4 tract of WD 29, one of the unencumbered tracts. Caisson No. 037 is actually located in the ***NW1***/4SW1/4NW1/4 tract,

[6] W&T does not dispute its decommissioning responsibility for Well No. 031 and the well is listed in W&T's July 17, 2025, maintenance and monitoring letter.

a tract that is not covered by any of the Assignments and in which W&T has never held any operating rights interest or record title interest.

54. On May 6, 2026, W&T timely filed an appeal of and petition to stay the Second Amended Order with IBLA.[7] The case was docketed at IBLA 2026-1059. W&T's Notice of Appeal and Petition for Stay of the Second Amended Order is attached hereto as Exhibit 7.

55. On July 8, 2026, during the pendency of W&T's IBLA appeal of the Second Amended Order, BSEE issued a new order to W&T regarding decommissioning of another pipeline, PSN 18897, which originates in Lease OCS 00384, West Delta Block 28 ("WD 28"), and terminates in the adjacent block, WD 29. W&T has never held any interest in WD 28 and, like the infrastructure at issue under the Second Amended Order, EPL installed PSN 18897 in June 2014, well after W&T assigned all of its rights in WD 29 to EPL. Notably, there is no record of this pipeline ever being governed by a pipeline right-of-way grant or permit, which would be necessary for a line, such as this one, that originates in one lease and terminates in another, *unless* both leases are owned in the same interest. As such, when BSEE approved the installation of PSN 18897 without a right-of-way, it could only have properly done so because BSEE considered this a lease term pipeline because both leases (WD 28 and WD 29) were 100% owned by EPL. W&T timely appealed the PSN 18897 decommissioning order, docketed at IBLA 2026-0247. This appeal has been suspended and the underlying decommissioning order stayed at the joint request of BSEE

[7] Also on May 6, 2026, W&T filed two additional appeals with IBLA, appealing the Decommissioning Order (2026-1061) and the Amended Order (IBLA 2026-1060). IBLA dismissed both appeals, reasoning that because the appeals were untimely, it lacked jurisdiction to consider the appeals.

and W&T pending the outcome of W&T's ongoing federal court action that addresses similar issues regarding infrastructure location and assignment of lease interests for WD 29.

56. On July 15, 2026, IBLA denied W&T's petition to stay the Second Amended Order. The Board's Order denying W&T's Petition to Stay the Second Amended Order is attached hereto as Exhibit 8. Consequently, the Second Amended Order is in effect and considered final agency action. 43 C.F.R. § 4.21(b)(2); *see also Farrell-Cooper Mining Co. v. United States Dep't of Interior*, 864 F.3d 1105, 1113 (10th Cir. 2017) (citing *Darby v. Cisneros*, 509 U.S. 137, 152 (1993)). W&T subsequently discussed with BSEE the possibility of agreeing to jointly request a suspension of the appeal as well as a stay of the Second Amended Order. The parties agreed to file a joint motion to suspend the appeal, however BSEE declined to agree to also seek a stay of the Second Amended Order.

57. On August 11, 2026, W&T and BSEE filed a joint motion to suspend the IBLA appeal of the Second Amended Order, which the Board granted the following day. The Board's Order granting the joint motion to suspend the appeal is attached hereto as Exhibit 9. The appeal and all deadlines are suspended until August 11, 2027. While the IBLA appeal is suspended, the Second Amended Order remains in effect and enforceable against W&T.

## COUNT ONE

### The Department's Allocation of Decommissioning Obligations Is Arbitrary and Capricious Because It Is Based on Material Factual Errors Regarding the Location of the Infrastructure and W&T's Historical Interests

58. W&T repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

59. Under the APA, a reviewing court must set aside agency action that is "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A). An agency acts arbitrarily and capriciously when it fails to reasonably consider the relevant issues, fails to reasonably explain its decision, or bases its decision on reasoning that fails to account for relevant factors or reflects a clear error of judgment. *See Wages & White Lion Investments, L.L.C. v. United States Food & Drug Administration*, 16 F.4th 1130, 1136 (5th Cir. 2021); *Texas v. United States Environmental Protection Agency*, 170 F.4th 328, 338 (5th Cir. 2026). An agency's decision is invalid if "it rests upon a factual premise that is unsupported by substantial evidence." *Genuine Parts Co. v. EPA*, 890 F.3d 304, 346 (D.C. Cir. 2018). Reviewing courts cannot "defer to the agency's conclusory or unsupported suppositions." *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 562 (D.C. Cir. 2010) (quotation omitted).

60. BSEE's determination of W&T's decommissioning obligations rests on fundamental factual errors regarding the location of the infrastructure at issue and W&T's historical interests in WD 29. BSEE's assignment of decommissioning liability for Platform J and supporting PSNs 19038, 19039, and 19040 to W&T evinces a clear error of

judgment because it assigns W&T liability for infrastructure in which W&T never held any interest.

61. The Second Amended Order identifies Platform J as being located in the NE1/4NW1/4SW1/4 tract of WD 29. The administrative record and BOEM-approved development documents show that Platform J is actually located in the ***NW1***/4NW1/4SW1/4 tract. In fact, in a related case before this Court, the Department "admits the allegations in the first sentence of Paragraph 34 that Platform J and Wells J001 and J004 are located in the NW1/4NW14SW1/4 tract of WD 29." *W&T Offshore, Inc. v. United States Department of the Interior*, 3:26-cv-00139, Dkt. 13 ¶ 34 (August 20, 2026).

62. W&T never held either record title interest or operating rights interest in the NW1/4NW1/4SW1/4 tract. By contrast, EPL held the relevant interests in that tract when Platform J was approved and installed. Because W&T never owned an interest in that tract, W&T could not have accrued decommissioning obligations for infrastructure located there under 30 C.F.R. § 250.1702.

63. The same defect infects BSEE's allocation of liability for PSNs 19038, 19039, and 19040 and for PSN 17346. The Second Amended Order misidentifies the locations of the facilities from which those pipelines originate and incorrectly attributes decommissioning responsibility to W&T despite the absence of any ownership interest by W&T in the relevant tracts.

64. By assigning W&T liability for infrastructure located on tracts in which W&T never held any interest, the Department failed to reasonably consider the relevant facts and reached a conclusion that reflects a clear error of judgment. The Department's

allocation of decommissioning obligations therefore falls outside the zone of reasonableness required by the APA. *See Wages & White Lion*, 16 F.4th at 1136.

65. Because the Second Amended Order rests on material factual errors concerning both the location of the infrastructure and W&T's historical interests, the Second Amended Order is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law under 5 U.S.C. § 706(2)(A). W&T is therefore entitled to vacatur of the Second Amended Order.

## <u>COUNT TWO</u>
## The Department's Allocation of Decommissioning Obligations Is Contrary to Law Because W&T Never Accrued Decommissioning Obligations for the EPL Infrastructure

66. W&T repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

67. A predecessor operating rights holder does not accrue decommissioning obligations for infrastructure it neither installed nor owned as existing infrastructure.

68. W&T's status as a predecessor-in-interest on WD 29 depends on accrued obligations, not merely its status as a prior operating rights owner. Federal regulations define a predecessor as "a prior . . . owner of operating rights. . . that is liable for accrued obligations on that lease." 30 C.F.R. § 250.1700. Under that definition, a party is not a predecessor for every later-installed infrastructure simply because it once owned operating rights. It is a predecessor only for obligations it *actually accrued*.

69. Section 250.1702 creates two distinct accrual paths: (1) the party that drills a well or installs infrastructure accrues liability by the act of drilling or installing or (2) a

later owner accrues liability only if it becomes a lessee or operating rights owner on which the well or other infrastructure already exists. Here, W&T fits neither path for the EPL Infrastructure. There was no event under section 250.1702 by which W&T accrued obligations for the EPL Infrastructure.

70. Despite the fact that W&T could not have accrued decommissioning obligations because it divested operating rights in WD 29 before the EPL Infrastructure was installed, BSEE relies on 30 C.F.R. §§ 556.805–806 as the basis for W&T's obligation. These regulations provide that "[a]n operating rights owner (who does not hold record title) who assigns the operating rights remains liable for all obligations of the lease that accrued during the period in which the assignor owned the operating rights, up to the effective date of the assignment, including decommissioning obligations that accrued during that period." 30 C.F.R. § 556.805. The effective date of an assignment of operating rights is the first day of the month following the date on which BOEM approves the request to assign the rights. *See id.* § 556.806

71. BSEE's reliance on sections 556.805 and 556.806 is incorrect. BSEE's reading of the regulations presupposes that an assignor actually accrued the obligation under Part 250. But they do not create accrual for infrastructure a predecessor neither installed nor owned as existing infrastructure under section 250.1702. If no accrual occurred under section 250.1702, there is nothing for sections 556.805 or 556.806 to preserve.

72. By interpreting sections 556.805 and 556.806 to create decommissioning liability for facilities that W&T neither installed nor owned, BSEE adopted an

interpretation incompatible with the text, structure, and purpose of the governing regulations.

73. Deference to an agency's interpretation of its regulations is "undoubtedly inappropriate, for example, when the agency's interpretation is plainly erroneous or inconsistent with the regulation." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012) (quotation omitted).

74. The Second Amended Order is therefore contrary to law and must be held unlawful and set aside under 5 U.S.C. § 706(2)(A) and (C). W&T is therefore entitled to vacatur of the Second Amended Order.

**<u>COUNT THREE</u>**
**The Department's Allocation of Decommissioning Obligations Is Arbitrary and Capricious Because It Applies the Regulations in a Manner Contrary to Their Purpose**

75. W&T repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

76. An agency's regulatory interpretation is arbitrary and capricious if the interpretation of the regulation is unreasonable or inconsistent with the regulation's purpose. *Sw. Pharmacy Sols., Inc. v. Centers for Medicare & Medicaid Servs.*, 718 F.3d 436, 443 (5th Cir. 2013).

77. The BOEM operating rights transfer approval process was designed to close a narrow loophole that could otherwise enable sham transfers of operating rights in offshore leases. Before section 556.806 was published, an assignment could be deemed effective before BOEM approval, enabling lessees to escape liability through sham transactions. *See*

81 FED. REG. 18112, 18135 (March 20, 2016) (explaining that before the rule, if a request was made to assign a lease in April, it could become effective on the first of May, even if BOEM did not approve it until the fifteenth of May.). This context illustrates that the provision was intended to prevent abuse at the margins, not to extend predecessor liability for years as BSEE attempts to do here.

78. W&T's divestiture in 2013 was a bona fide transfer of operating rights. EPL operated the lease for seven years, which is irreconcilable with any suggestion of a sham assignment. Moreover, BOEM itself approved requests that EPL submitted in December 2013 and in 2014 (after the assignment from W&T to EPL) to build pipelines, a platform, and wells. BOEM eventually approved the January 1, 2013 transfer—albeit after an unreasonable and unexplained four-year delay and after having approved EPL's post-assignment requests to build new infrastructure on WD 29. To apply section 556.805 in this case to saddle W&T with decommissioning liability for facilities installed long after its exit distorts the regulation beyond its intended scope.

79. By applying the regulations to impose liability on W&T under these circumstances, BSEE transformed a narrow anti-evasion safeguard into a mechanism for retroactively expanding predecessor liability based solely on agency delay. Because that application is inconsistent with the purpose, structure, and operation of the governing regulations, the Second Amended Order is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law under 5 U.S.C. § 706(2)(A). W&T is therefore entitled to vacatur of the Second Amended Order.

## COUNT FOUR

**The Second Amended Order Is Arbitrary and Capricious Because It Relies on Explanations Not Reflected in the Agency's Contemporaneous Decisionmaking**

80. W&T repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

81. An agency action must stand or fall on the reasoning actually employed by the agency when it acted. A reviewing court may not uphold agency action based on explanations developed after the decision was made. *See SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943) ("We merely hold that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained"). Likewise, courts may not accept post hoc rationalizations offered to defend agency action where those rationales were not part of the agency's contemporaneous analysis. *Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846, 856 (5th Cir. 2022) ("The fact that an agency provided a post hoc rationalization is relevant evidence that the action is arbitrary and capricious.").

82. The Second Amended Order assigns W&T decommissioning obligations for Platform J, Wells J002 and J003, PSNs 19038, 19039, 19040, and PSN 17346. Yet the Order contains no explanation reconciling that allocation with the undisputed facts that: (1) W&T transferred its operating rights effective January 1, 2013; (2) EPL installed the infrastructure after that date; and (3) W&T never held any interest in the tract where Platform J is located.

83. Nor does the Second Amended Order explain how W&T could have accrued decommissioning obligations under 30 C.F.R. § 250.1702 for infrastructure it neither

installed nor owned as existing infrastructure. The Second Amended Order simply assigns the obligations without addressing the governing accrual regulations or the factual circumstances surrounding the infrastructure's installation.

84. The agency similarly failed to explain how BOEM's delayed approval of the Assignments affected W&T's alleged liabilities or why the approval date, rather than the January 1, 2013 effective date of the Assignments, should control the accrual analysis. Nothing in the Second Amended Order identifies BOEM's approval process, the clouded-title issues, or any purported relationship between those matters and W&T's accrued obligations.

85. To the extent the Department now relies on theories concerning BOEM's assignment approval process, delayed approval of the Assignments, or alleged title defects to justify allocation of the decommissioning obligations to W&T, those explanations do not appear in the Second Amended Order itself and were not identified as the basis for the agency's determination when the decision was made. Such after-the-fact explanations cannot cure the Second Amended Order's failure to provide a reasoned basis for its conclusions.

86. Because the Second Amended Order fails to articulate a rational connection between the facts before the agency and the liabilities assigned to W&T, and because any subsequent explanations constitute impermissible post hoc rationalizations, the Second Amended Order is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law under 5 U.S.C. § 706(2)(A). W&T is therefore entitled to vacatur of the Second Amended Order.

## COUNT FIVE

**The Department's Allocation of Decommissioning Obligations Is Arbitrary and Capricious Because It Failed to Consider Important Aspects of the Problem**

87. W&T repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

88. An agency's decision is arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem." *Motor Vehicle Manufacturers' Association v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 (1983). Likewise, courts must set aside agency action premised on reasoning that fails to account for relevant factors or reflects a clear error of judgment. *See Wages & White Lion Invs.*, 16 F.4th at 1136.

89. In allocating decommissioning obligations to W&T, BSEE failed to consider several facts that were directly relevant to whether W&T accrued any decommissioning obligations for the EPL Infrastructure and PSN 17346. Most significantly, BSEE failed to meaningfully consider BOEM's acknowledged errors in the WD 29 lease records, BOEM's resulting delay in processing the Assignments, and the effect those circumstances had on W&T's alleged liability.

90. The record reflects that BOEM personnel repeatedly acknowledged errors in BOEM's records concerning WD 29 and informed W&T and EPL that BOEM was working to correct those errors. BOEM ultimately took approximately four years to approve the Assignments despite their January 1, 2013 effective date. During that same period, BOEM approved EPL's plans to install Platform J, Wells J002 and J003, and the

associated pipelines and treated EPL as the operator and leaseholder responsible for those development activities.

91. Yet the Second Amended Order contains no analysis of BOEM's role in creating the delay, no discussion of whether it is reasonable to attribute liability to W&T based on that delay, and no explanation of the significance of BOEM's approvals authorizing EPL to install the infrastructure that BSEE now seeks to assign to W&T. BSEE likewise failed to address the reliance interests created by BOEM's conduct, including BOEM's treatment of EPL as the party authorized to install and operate the infrastructure at issue.

92. These considerations were not peripheral to BSEE's decision. They go directly to the central question in dispute: whether W&T can properly be charged with decommissioning obligations for infrastructure installed years after W&T divested its interests and during a period in which BOEM itself recognized EPL as the operative interest holder on the lease. By failing to address those issues, BSEE ignored important aspects of the problem before it.

93. Because BSEE failed to consider the significance of BOEM's acknowledged record errors, BOEM's prolonged approval delay, BOEM's approval of EPL's development activities, and the resulting effect on the allocation of accrued decommissioning obligations, the Second Amended Order is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law under 5 U.S.C. § 706(2)(A). W&T is therefore entitled to vacatur of the Second Amended Order.

**PRAYER FOR RELIEF**

WHEREFORE, W&T prays that this Court:

(a) Vacate the Second Amended Order and declare that W&T is not responsible for decommissioning the EPL Infrastructure and PSN 17346, or, in the alternative, remand the dispute to the Department for further proceedings to consider whether W&T may be held responsible for decommissioning the EPL Infrastructure and PSN 17346;

(b) Grant W&T such other relief as the Court deems appropriate under the circumstances.

Dated: October 2, 2026

Respectfully Submitted,

By: */s/ Marc S. Tabolsky*

***Attorney in Charge***
Marc S. Tabolsky
Texas Bar No. 24037576
S.D. Tex. No. 37164
Liz A. Pursley
Texas Bar No. 24116927
S.D. Tex. No. 3881860
Rebecca Scribner
Texas Bar No. 24145988
S.D. Tex. No. 3913572
HICKS JOHNSON PLLC
1550 Lamar Street, Suite 1900
Houston, Texas 77010
Phone: 713-357-5150
Fax: 713-357-5160
mtabolsky@hicksjohnson.com
epursley@hicksjohnson.com
bscribner@hicksjohnson.com

**ATTORNEYS FOR PLAINTIFF W&T OFFSHORE, INC.**